# PATSONE *v.* COMMONWEALTH OF PENNSYLVANIA.

## ERROR TO THE SUPREME COURT OF THE COMMONWEALTH OF PENNSYLVANIA.

No. 38.  Argued November 4, 1913.—Decided January 19, 1914.

The act of May 8, 1909, of Pennsylvania, making it unlawful for unnaturalized foreign born residents to kill wild game except in defence of person or property and to that end making the possession of shot guns and rifles unlawful, is not unconstitutional under the due process and equal protection provisions of the Fourteenth Amendment.

A State may protect its wild game and preserve it for its own citizens. *Geer* v. *Connecticut*, 161 U. S. 519.

A State may classify with reference to the evil to be prevented.

The determination of the class from which an evil is mainly to be feared and specialized in the legislation is a practical one dependent upon experience; and this court is slow to declare that the state legislature is wrong in its facts. *Adams v. Milwaukee*, 228 U. S. 572.

A State may direct its police regulations against what it deems the evil as it actually exists without covering the whole field of possible abuse. *Central Lumber Co.* v. *South Dakota*, 227 U. S. 157.

The provisions in Article II of the treaty with Italy, giving citizens of Italy the right to carry on trade on the same terms as natives of this country, and provisions in the treaty with Switzerland, applicable to citizens of Italy under the favored nation clause in Article XXIV of the treaty with Italy, relate to trade, and are not applicable to personal use of firearms; and a state statute protecting wild game and prohibiting aliens from owning shot guns and rifles is not incompatible with or violative of such treaty provisions.

*Quære*, and not to be decided on this record, whether the statute in this case can be construed as precluding an alien from possessing a stock of guns for purposes of trade and whether in that event it would violate rights under the treaty with Italy of 1871.

Equality of rights assured to citizens of Italy under the treaty of 1871 is that of protection and security for persons and property and nothing in that treaty purports or attempts to prevent a State from exercising its power for preservation of wild game for its own citizens.

231 Pa. St. 46, affirmed.

THE facts, which involve the constitutionality of the wild game statute of Pennsylvania making it unlawful for any unnaturalized foreign born resident to kill wild birds or animals and the validity of such statute as applied to an Italian citizen in view of the treaty with Italy, are stated in the opinion.

*Mr. Marcel Viti* for plaintiff in error:

The statute violates the Fourteenth Amendment. It deprives persons of liberty and property without due process of law. *Barbier* v. *Connolly*, 113 U. S. 27; *Mugler* v. *Kansas*, 123 U. S. 623, 661.

While the legislature may have authority to declare unlawful property which is innocent in itself, yet such power must not be exercised in such a way as to infringe fundamental rights to a greater extent than is absolutely necessary for the accomplishment of the legal purpose in view. Neither *Lawton* v. *Steele,* 152 U. S. 133, nor *Geer* v. *Connecticut,* control this case.

The cases of *People* v. *West,* 106 N. Y. 293, 297; *Osborn* v. *Charlevoix,* 114 Michigan, 655; *Luck* v. *Sears,* 29 Oregon, 421; *State* v. *Lewis,* 134 Indiana, 250; *McConnell* v. *Mc-Killip,* 71 Nebraska, 712, can all be distinguished.

A State may forbid absolutely the possession of game within its borders because the individual only acquires therein a qualified right of property; it may also forbid the possession of articles which are not adapted to any but an unlawful use and may confiscate articles actually put to an illegal use or found under circumstances, from which it must necessarily be inferred that such articles had been or were about to be used for an illegal purpose.

Under the terms of the present act the mere possession of property, innocent in itself, and having lawful uses, is made an offence apart from its being used unlawfully and its forfeiture is fixed as part of the penalty.

The legislature cannot provide that implements which are susceptible of beneficial use and which have not been perverted to an unlawful use, be summarily abated or declared forfeited after a hearing, as part of a penalty for the offence of having them in possession.

Shot guns and rifles are articles of property not harmful in themselves, necessary for legitimate uses, and there is no manifest necessity to forbid their possession in order to prevent aliens from hunting game.

The State has not the right to confiscate such property under such circumstances and without a hearing at which he can offer a defence.

The possession of property harmless in itself and which is necessary for lawful purposes cannot be prohibited and the property itself confiscated merely because it is also capable of being put to an illegal use.

The equal protection provisions of the Fourteenth Amendment are violated by the act. It forbids the possession of shot guns and rifles by resident aliens alone, thus depriving them of efficient and essential instruments for protection of person and property. It provides for the confiscation of valuable, innocent property when owned by aliens, notwithstanding that it has never been put to any illegal use. It singles out a class for discriminating and hostile legislation. *Duncan* v. *Missouri*, 152 U. S. 377, 382; *Missouri* v. *Lewis*, 101 U. S. 22, 31.

There is a further discrimination against resident aliens as distinguished from non-resident aliens, as the latter are apparently allowed to possess shot guns and rifles, and use them within the State for the purpose of hunting game for periods of ten days, subject only to the general game laws of the State. *Plessy* v. *Ferguson*, 163 U. S. 530, 537; *State* v. *Montgomery*, 94 Maine, 192; *Templar* v. *Barbers' Board*, 131 Michigan, 254.

These inequalities cannot be justified on the ground of proper classification; see *Railway* v. *Ellis*, 165 U. S. 150, 155; *Yick Wo.* v. *Hopkins*, 118 U. S. 356, 369.

The statute contravenes the existing treaty between the United States and Italy of 1871; see Arts. II, III, 17 Stat. 845; and under the favored nation clause, Art. XXIV of that treaty, this statute also violates the provisions of the treaty with Switzerland of 1855, 9 Stat. 597, putting citizens on a footing of reciprocal equality. By this statute an Italian farmer in Pennsylvania cannot protect his property from birds and dogs even though wild and subject to be killed by citizens. See *In re Marshall*, 102 Fed. Rep. 325.

The wording of the treaty is plain and shows that the

contracting parties intended that their subjects should at least enjoy in the territory of each other the same liberty of carrying on trade and protection and security of their persons and property as natives under like conditions. *Maiorano* v. *Balt. & Ohio R. R. Co.*, 213 U. S. 268; *Crowley* v. *Christianson*, 137 U. S. 91.

The terms of the act are not limited to any class or nationality whatsoever. An alien merchant or manufacturer who may have spent most of his life in Pennsylvania, adding to its wealth as well as his own, not only may not shoot game, upon his own land, which has been held a right of property in *State* v. *Mallory*, 73 Arkansas, 236, but he is not allowed the possession of a shot gun or rifle upon such property for the protection thereof or for use in hunting game in other States where he might lawfully shoot under regulations applying to non-resident aliens.

No State may prohibit the possession of any lawful article of trade and commerce to Italian subjects and at the same time allow its possession by natives without violating the quoted treaty provisions.

In addition to violating the Italian treaty the act violates the treaty with Switzerland by imposing upon Italian subjects more burdensome conditions and other conditions in respect to the possession of property and the exercise of commerce than are imposed upon natives.

Treaties are the supreme law of the land and all state authority is subordinate thereto, especially when the treaty, as in this case, is self-executing, *Hauenstein* v. *Lynham*, 100 U. S. 484, and relates to a proper subject of treaty negotiation. *Jacobson* v. *Massachusetts*, 197 U. S. 11, 24. See also *Matter of Heff*, 197 U. S. 405, 488.

*Mr. John C. Bell*, Attorney General of the State of Pennsylvania, and *Mr. William M. Hargest*, with whom *Mr. W. H. Lemon* was on the brief, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

The plaintiff in error was an unnaturalized foreign born resident of Pennsylvania and was complained of for owning or having in his possession a shot gun, contrary to an act of May 8, 1909. Laws, 1909, No. 261, p. 466. This statute makes it unlawful for any unnaturalized foreign born resident to kill any wild bird or animal except in defence of person or property, and 'to that end' makes it unlawful for such foreign born person to own or be possessed of a shot gun or rifle; with a penalty of twenty-five dollars and a forfeiture of the gun or guns. The plaintiff in error was found guilty and was sentenced to pay the above mentioned fine. The judgment was affirmed on successive appeals. 231 Pa. St. 46. He brings the case to this court on the ground that the statute is contrary to the Fourteenth Amendment and also is in contravention of the treaty between the United States and Italy, to which latter country the plaintiff in error belongs.

Under the Fourteenth Amendment the objection is two-fold; unjustifiably depriving the alien of property and discrimination against such aliens as a class. But the former really depends upon the latter, since it hardly can be disputed that if the lawful object, the protection of wild life (*Geer* v. *Connecticut*, 161 U. S. 519), warrants the discrimination, the means adopted for making it effective also might be adopted. The possession of rifles and shot guns is not necessary for other purposes not within the statute. It is so peculiarly appropriated to the forbidden use that if such a use may be denied to this class, the possession of the instruments desired chiefly for that end also may be. The prohibition does not extend to weapons such as pistols that may be supposed to be needed occasionally for self-defence. So far, the case is within the principle of *Lawton* v. *Steele*, 152 U. S. 133.

See further *Silz* v. *Hesterberg,* 211 U. S. 31. *Purity Extract Co.* v. *Lynch,* 226 U. S. 192.

The discrimination undoubtedly presents a more difficult question. But we start with the general consideration that a State may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one dependent upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 80, 81. The State 'may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses.' *Central Lumber Co.* v. *South Dakota,* 226 U. S. 157, 160. *Rosenthal* v. *New York,* 226 U. S. 260, 270. *L'Hote* v. *New Orleans,* 177 U. S. 587. See further *Louisville & Nashville R. R. Co.* v. *Melton,* 218 U. S. 36. The question therefore narrows itself to whether this court can say that the Legislature of Pennsylvania was not warranted in assuming as its premise for the law that resident unnaturalized aliens were the peculiar source of the evil that it desired to prevent. *Barrett* v. *Indiana,* 229 U. S. 26, 29.

Obviously the question so stated is one of local experience on which this court ought to be very slow to declare that the state legislature was wrong in its facts. *Adams* v. *Milwaukee,* 228 U. S. 572, 583. If we might trust popular speech in some States it was right—but it is enough that this court has no such knowledge of local conditions as to be able to say that it was manifestly

wrong. See *Trageser* v. *Gray,* 73 Maryland, 250. *Commonwealth* v. *Hana,* 195 Massachusetts, 262.

The defence under the treaty with Italy of February 26, 1871, 17 Stat. 845, appears to us to present less difficulty. The provisions relied upon are those in Article 2, giving to citizens of Italy the right to carry on trade and to do anything incident to it upon the same terms as the natives of this country; in Article 3, assuring them security for persons and property and that they "shall enjoy in this respect the same rights and privileges as are or shall be granted to the natives, on their submitting themselves to the conditions imposed upon the natives" and in Article 24 promising to the Kingdom of Italy the same favors in respect to commerce and navigation that may be granted to other nations. We will say a word about each.

The last article is supposed to make applicable a convention with Switzerland (proclaimed November 9, 1855, 11 Stat. 597) providing against more burdensome conditions being imposed upon the residence of Swiss than upon that of citizens. But Article 24 refers only to commerce and navigation and the case must stand wholly upon Articles 2 and 3. As to Article 2 it will be time enough to consider whether the statute can be construed or upheld as precluding Italians from possessing a stock of guns for purposes of trade when such a case is presented. The act was passed for an object with which possession in the way of trade has nothing to do and well might be interpreted as not extending to it. There remains then only Article 3. With regard to that it was pointed out below that the equality of rights that it assures is equality only in respect of protection and security for persons and property. The prohibition of a particular kind of destruction and of acquiring property in instruments intended for that purpose establishes no inequality in either respect. It is to be remembered that the subject of this whole discussion is wild game, which the State may preserve for

its own citizens if it pleases. *Geer* v. *Connecticut*, 161 U. S. 519, 529. We see nothing in the treaty that purports or attempts to cut off the exercise of their powers over the matter by the States to the full extent. *Compagnie Francaise de Navigation a Vapeur* v. *State Board of Health*, 186 U. S. 380, 394, 395.

*Judgment affirmed.*

THE CHIEF JUSTICE dissents.