## Commonwealth v. Angello et al.

*Russell J. Brownback,* of *Brownback & Reynolds,* for Commonwealth and Borough of Norristown.

*Milton Jacobson,* for defendants.

KNIGHT, P. J., November 17, 1948.—The Borough of Norristown enacted an ordinance prohibiting the parking of commercial vehicles on the streets of a designated district of the borough, between certain hours in the night time. Defendants admittedly violated the terms of the ordinance. They were arrested, and two of them were given a hearing before a justice of the peace, who found them guilty and imposed a fine. This court allowed an appeal. The third defendant waived a hearing, and the three cases were heard before Judge Corson, who found all three defendants guilty. Defendants then filed exceptions to this finding, and these exceptions were argued before the court en banc.

These are admittedly test cases and it was agreed by counsel that all technical objections that might be raised as to the procedure were waived so that the decisions might be based on the question of substantive law involved.

Defendants contend that the ordinance deals only with motor vehicles on the public streets; that it is essentially an attempt to regulate parking of commercial vehicles on the highways of the borough, and as such violates those provisions of The Motor Vehicle Code of May 1, 1929, P. L. 905, which provide what restrictions and regulations local government may impose on the parking of motor vehicles on the public

highways, and under what conditions these restrictions and regulations may be imposed. It is also contended that the ordinance is unconstitutional.

While of course the case is brought in the name of the Commonwealth, the Borough of Norristown is the interested party, and the cases were argued by the borough solicitor, who contends that the ordinance was passed under the general police power of the municipality, and was ordained by virtue of an express power contained in the Borough Code of 1947, sec. 40, which among other powers granted the corporate authorities, gave them the power: "To make regulations within the borough, or within such limits thereof as may be deemed proper, relative to the cause and management of fires and the prevention thereof."

It seems to us that the question before us is to determine whether the ordinance represents a proper exercise of the above-quoted power given to boroughs by the Borough Code of July 10, 1947, P. L. 1621, 53 PS §13311. If the purpose and effect of the ordinance is to regulate parking, then the piece of legislation is unenforcible as to these defendants, as we will hereafter point out, and the findings of guilt should be set aside.

Ordinance No. 801 provides in part:

"Section 1. That upon the boundaries of or within the fire limits of The Borough of Norristown as defined in Chapter VI, Section 1 (a) of the Regular Building Code of the Borough of Norristown as amended, the parking of commercial trucks and/or trailers of all classifications and descriptions is prohibited between the hours of 9:00 o'clock P.M. and 6:00 o'clock A.M."

The fire limits of the borough mentioned in the above section roughly coincide with the business and industrial districts, and portions of the residence districts built up largely with row houses. It will be noted that the ordinance applies to commercial vehicles of

all classifications: no distinction is made between the smallest delivery truck and the largest trailer.

Let us examine the ordinance in the light of the express power given to boroughs to make regulations relative to the cause and management of fires and the prevention thereof.

Certainly it cannot be earnestly contended that a commercial vehicle parked on the street causes fires, and if the vehicle did catch fire on the street it would be quickly and easily discovered, and would not do as much damage to property as it would if placed in a garage.

The argument that a truck carries more gasoline than a pleasure car and is therefore a greater fire hazard appears to us weak indeed. Many small trucks do not carry more gasoline than pleasure cars, and the testimony does not disclose one instance of property damaged by fire from a truck. We cannot see how the ordinance has any definite relation to the prevention of fires. If there is little or no danger of a parked commercial vehicle causing a fire, the removal of the vehicle from the street will not prevent a fire.

This leaves for consideration the management of fires. It is contended that trucks parked along the streets at night will interfere with firemen and apparatus fighting fires, and that collisions between fire-fighting apparatus and trucks will happen in going to or returning from fires. The same contention could be made as to parked pleasure cars, and we fail to see how the hazard is any greater from 9 p.m. to 6 a.m. than it is during the rest of the 24 hours; in fact, in our opinion, the hazard would be less.

The Vehicle Code prohibits the parking of motor vehicles within a certain distance from a fire hydrant, so that fire-fighting apparatus can get to the source of water supply. The distance between the curb and the house line gives the firemen ready access to the

burning building, and a truck is a movable object which can be moved out of the way of the fire fighters.

It is to be noted that no official of the fire department of the Borough of Norristown testified at the hearing. The only witness called by the Commonwealth to show the necessity and reason for the ordinance was the police chief, and he made the most general answers to leading questions.

As we view it, the ordinance in question cannot be supported as an exercise of the power granted the borough under section 40 of the Borough Code, and is essentially an ordinance to restrict parking on the highways under the guise of a fire regulation.

The borough solicitor has cited William Laubach & Sons v. Easton, 347 Pa. 542, 546 (1943), wherein it is said:

"Highways are primarily for travel. As Lord Ellenborough said in an early case, Rex v. Cross, 3 Camp. 224, 227: 'No one can make a stableyard of the King's highway.' To paraphrase that statement as applied to the present day: 'No one may make a public garage of a public highway.' "

With the law and the reason of that statement, we are in full accord. The Borough of Norristown believes in it too, for it has an ordinance prohibiting all night parking, under which, if enforced, it could accomplish the same results as under the ordinance we are now considering. Witness also the parking meters on many of its streets.

We hold then that Ordinance 801 is essentially an ordinance to regulate the parking of trucks; it deals entirely with motor vehicles on the highways of the borough. As an ordinance purporting to regulate parking, it exceeds the powers given to local government to regulate the parking of motor vehicles, nor does it comply with the conditions imposed by The

Vehicle Code, under which the regulations may be enforced.

Section 1103 of The Vehicle Code, as amended, 75 PS §663, provides in part:·

"Local authorities, except as expressly authorized by this act, shall have no power or authority to alter any speed lmitations declared in this act, or to enact or enforce any ordinance, rule or regulation contrary to the provisions of this act, except that local authorities shall have power to provide by ordinance for the regulation of traffic by means of peace officers or official traffic signals on any portion of the highway where traffic is heavy or continuous, and may regulate or prohibit parking, stopping or loading of vehicles, or prohibit other than one-way traffic upon certain highways."

·The power to regulate parking contained in section 1103, supra, is qualified by section 1106, PS 75 §682, which provides as follows:

"Local authorities, in their respective jurisdiction, may cause official signs, in accordance with section one thousand one hundred and five of this act, to be erected and maintained, as may be appropriate; to give notice of legal parking and other local ordinances, rules and regulations. Local parking and other local ordinances, rules, and regulations shall not be enforceable against an alleged violator, if, at the time and place of the alleged violation, an official sign, giving notice thereof, is not posted conspicuously by the municipalities making the same, at points where any highway affected thereby joins other highways."

It is admitted that no signs of any kind were erected by the borough authorities, giving notice of the provisions of Ordinance 801. The ordinance was then unenforcible against these defendants.

It may be also pointed out that Ordinance 801 provides as a penalty for violation thereof, a fine of $50

and in default of payment, imprisonment for 30 days. Section 1212(c) of The Vehicle Code, 75 PS §742, provides in part:

"(c) Any city, borough, incorporated town, township or county, which enforces an ordinance, rule or regulation on a matter concerning which authority is expressly delegated to said authorities by this act, or for traffic matters not covered by this act, may impose a fine of not more than Fifty ($50.00) Dollars, to be collected by summary conviction . . . In the event of non-payment of fines and costs of prosecution, the magistrate may sentence any person, convicted of violating an ordinance, rule or regulation, to undergo imprisonment for a period of not exceeding ten (10) days . . ."

If Ordinance 801 was enacted by virtue of a power conferred upon local government by The Vehicle Code, and we hold that it was, then the term of imprisonment prescribed as a penalty for its violation exceeds the limit allowed by section 1212(c), supra.

Defendants contend that the ordinance is unconstitutional because it is unreasonable and discriminatory. The ordinance is not unreasonable. No one has a right to use the public highway as a garage, and the ordinance does not deprive these defendants of any rights they possess. The fact that there is a 100 percent obedience to its terms, at the present time, is persuasive that the parking restriction causes little inconvenience to the operators of trucks. One of the major problems of today is the unreasonable use of the highways for parking purposes, and an ordinance which seeks to correct this abuse cannot be called unreasonable.

It is also contended that the ordinance is discriminatory, in that it does not apply to pleasure cars.

In Equitable Cr. & Dis. Co. v. Geier, 342 Pa. 445, 449 (1941), the Supreme Court said:

"In Commonwealth v. Puder, 261 Pa. 129 . . . the court . . . reiterated the well-known principle . . . that 'Classification is a legislative question subject to judicial revision only so far as to see it is founded on real and not merely artificial distinctions, and, if the distinctions are genuine, the court cannot declare the classification void, though they may not consider the basis to be sound. The test is not wisdom, but good faith, in the classification.' "

The Vehicle Code makes many distinctions between pleasure cars and commercial vehicles, distinctions based on speed, weight, license fees, equipment, etc. True it is, the code makes no distinction as to parking, and true it is, that a few commercial vehicles are no longer than pleasure cars, but the great majority of trucks are of greater size than the pleasure cars. This is a matter of daily observance on our highways. Some of these trucks and trailers are virtually modern box cars, rolling along our highways, and it is easy to see how these huge vehicles, parked all night on the streets of the borough, particularly the narrow streets, would be a traffic hazard, not only to fire apparatus, but to other users of the streets. In case of fire in a building, it would take longer and be more difficult to move one of these large commercial vehicles that might be impeding the work of the firemen, than it would to move a pleasure car.

The charge made by defendants of unwarranted discrimination is fully answered, it seems to us, by the case of Maurer et al. v. Boardman et al., 336 Pa. 17 (1939), cited by the borough solicitor. In that case, a provision of The Vehicle Code which prohibited the operation of vehicles carrying other vehicles, any part of which extended over the cab of the transporting vehicle, was attacked as unreasonable, discriminatory and class legislation. In answering this contention, the court said (pages 26 and 27) :

"For the same reasons there is no merit in the plaintiffs' contention that the act here assailed denies to them the equal protection of the laws and constitutes special legislation. This is based upon the charge that equipment of the type operated by them is discriminated against in favor of other types whereby part of the cargo is carried over the cab. Plaintiffs sought to establish by photographic evidence that trucks operate upon the highways of the state with portions of their cargoes extended over the head of the operator of the truck.

"Here the evil sought to be prevented is the practice of carrying an automobile over the cab of a vehicle. The legislature by enacting Section 1033(c) has efficiently directed its effort toward the prohibition of that practice. That other persons in the trucking business may continue to engage in practices not prohibited by Section 1033(c), but equally and similarly dangerous, is not enough to render the Section in question unconstitutional, because the right of the legislature to classify with reference to the particular evil sought to be prevented is undoubted. An act designed to remedy an existing ill may not be declared invalid because it leaves other ills unremedied. It is not required that the entire field of possible abuses be covered: Patsone v. Com. of Pa., 232 U. S. 138; Keokee Consolidated Coke Co. v. Taylor, 234 U. S. 224; Clark v. Paul Gray, Inc., et al., 83 L. Ed. (Adv.) 736."

We are of the opinion that Ordinance 801 of the Borough of Norristown is not unconstitutional, but cannot be enforced against these defendants. It is only fair to say that Judge Corson found defendants guilty so that the case could be brought before the court en banc.

And now, November 17, 1948, the exceptions to the findings of guilt by the trial judge are sustained; the motions in arrest of judgment allowed; the findings of

guilt are set aside; and the defendants found "Not guilty".

It is directed that the fines and costs paid by Harry Angello and Michael Cotteta be returned to them, and the bail posted by Gasper Bono be returned to him.