81 N.J. Super. 243 (1963)
195 A.2d 318
NEW JERSEY HOME BUILDERS ASSOCIATION, A CORPORATION, NEW JERSEY ASSOCIATION OF REAL ESTATE BOARDS, A CORPORATION, AND JOSEPH V. MONTORO, PLAINTIFFS,
v.
DIVISION ON CIVIL RIGHTS IN THE DEPARTMENT OF EDUCATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 13, 1963.
*247 Mr. W. Louis Bossle for the plaintiffs.
Mr. Arthur J. Sills, Attorney General of New Jersey, for defendant (Mr. Joseph A. Hoffman, Deputy Attorney General, of counsel).
WICK, J.S.C.
This is a suit wherein plaintiffs New Jersey Home Builders Association, New Jersey Association of Real Estate Boards and Joseph Montoro seek by declaratory judgment to invalidate certain portions of the Law Against Discrimination (N.J.S.A. 18:25-1 et seq).
The New Jersey Home Builders Association is a nonprofit corporation of the State of New Jersey. Its membership is comprised of persons, partnerships, associations and corporations of this State engaged in the business of home building. It was formed for the purpose of representing the home builders industry for "mutual advantage and cooperation." The New Jersey Association of Real Estate Boards, a coplaintiff, is also a nonprofit association whose membership is composed of most of the real estate brokers and many real estate salesmen licensed to do business in the State of New Jersey. The individual coplaintiff, Montoro, is engaged in the business of building dwellings and other structures. He is also a licensed *248 real estate broker, with licensed salesmen in his employ at his place of business in Pleasantville, Atlantic County, New Jersey. Montoro is a member of the New Jersey Home Builders Association, a coplaintiff in this action.
The Law Against Discrimination (N.J.S.A. 18:25-1 et seq.) requires that all persons shall have an equal opportunity to obtain all the advantages of
"* * * publicly assisted housing accommodation, and other real property without discrimination * * * subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right." (N.J.S.A. 18:25-4; emphasis added)
It is an unlawful discrimination for an owner, real estate broker, real estate salesman, or their agents or employees to refuse to sell, rent, lease, assign or sublease, or otherwise to deny to or withhold from any person or group of persons, any real property or land or part or portion thereof because of race, creed, color, national origin or ancestry of such person or group of persons. N.J.S.A. 18:25-12(g) and (h).
The law covers these classifications of properties:
(1) All publicly assisted housing accommodations. This category includes housing erected with public funds or assistance pursuant to certain State laws enumerated in N.J.S.A. 18:25-5(k) and
"* * * all housing financed in whole or in part by a loan, whether or not secured by a mortgage, the repayment of which is guaranteed or insured by the Federal Government or any agency thereof." (N.J.S.A. 18:25-5(k))
(2) All vacant lands. N.J.S.A. 18:25-5(l).
(3) All multiple dwellings containing accommodations for more than four families, regardless of the type of financing. N.J.S.A. 18:25-5(l)(1).
(4) All three-family dwellings where one of the units or apartments is not "maintained by the owner at the time of sale or rental as the household of his family." N.J.S.A. 18:25-5(l)(1).
*249 An exception from the operative provisions of the law exists if the dwelling is not subject to any indebtedness "the repayment of which is guaranteed or insured by the Federal Government or any agency thereof." N.J.S.A. 18:25-5(k), if it is in one of the following classes:
(1) All one and two-family dwellings
"except, however * * * when they are part of a group of 10 or more dwelling houses constructed or to be constructed * * * (exclusive of public streets) and are offered for sale or rental by a person who owns or has owned or otherwise controls or has controlled the sale or rental of such group of dwelling houses." N.J.S.A. 18:25-5(l)(2).
(2) All three-family dwellings where one unit or apartment is
"maintained by the owner at the time of sale or rental as the household of his family." N.J.S.A. 18:25-5(l)(1).
The Law Against Discrimination is based on the express legislative finding that discrimination is a threat to the rights and privileges of the inhabitants of the State and is a menace to free democracy. N.J.S.A. 18:25-3.
If the State Commissioner of Education finds (in accordance with the statute) an act of discrimination by a person subject to the provisions of the statute, he has the power to serve an order on the respondent requiring him to cease and desist from further action in violation of the law. N.J.S.A. 18:25-17. Upon a failure of the respondent to comply therewith, enforcement must be sought through the courts. N.J.S.A. 18:25-19 and 21.
The complaint sets forth six objectionable features of N.J.S.A. 18:25-1 et seq.:
(1) The Commissioner of Education is authorized to compel a home owner, under pain of fine or imprisonment, to sell or rent his home to a person without discrimination solely because the home is financed in whole or in part by a loan, whether or not secured by a mortgage, the repayment of which *250 is guaranteed or insured by the Federal Government or any agency thereof.
(2) Home owners not having such loans, and not otherwise obligated to the Federal Government, are accorded special immunities and privileges not accorded to home owners having such loans. The allegation in regard to this matter is that the result is arbitrary and invidious discrimination.
(3) This invasion amounts to the taking of private property for private use.
(4) The statute constituted an invasion of the fundamental rights of man.
(5) The classification is discriminatory in result because it is unreasonable, arbitrary and capricious and bears no relationship to the police power or the purposes sought to be attained by the enactment.
(6) The act is not within the public domain under the definition found in N.J.S.A. 18:25-5(k), in that it is violative of man's inalienable rights to property.
For these reasons it is alleged that the exceptions embodied in N.J.S.A. 18:25-5(l) also render the classification arbitrary, unreasonable and discriminatory and constitute an invasion of the fundamental rights of man, all in violation of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.
Further, it is alleged that the Law Against Discrimination, N.J.S.A. 18:25-1 et seq., insofar as it authorizes the Commissioner to compel builders, real estate brokers, real estate salesmen, or their employees and agents, to sell and/or build a dwelling, creates an involuntary servitude or a form of peonage, in violation of the Thirteenth Amendment of the Federal Constitution and of several federal statutes.

I.
The plaintiffs prosecute this action under N.J.S. 2A:16-53 of the Declaratory Judgments Law. The preliminary procedural requirement is a determination that a real controversy be found to exist. Lucky Calendar Co. v. Cohen, *251 20 N.J. 451 (1956). The court should not "decide or declare the rights or status of parties upon a state of facts which is future, contingent, and uncertain." Tanner v. Boynton Lumber Co., 98 N.J. Eq. 85, 89 (Ch. 1925).
The Declaratory Judgments Law (N.J.S. 2A:16-50 et seq.) is expressly declared to be remedial in nature. N.J.S. 2A:16-51. Its mandate is to afford relief from uncertainty with respect to a person's rights  "person" including partnerships, unincorporated associations and corporations. N.J.S. 2A:16-50. It is incumbent on the court to liberally construe and administer the law in order to effectuate this general purpose. N.J.S. 2A:16-51; Central Hofbrau Corp. v. 200 River St. Corp., 11 N.J. Super. 463 (Law Div. 1951); Rosenberg v. D. Kaltman & Co., 28 N.J. Super. 459 (Ch. Div. 1953).
That the complaint does not allege a past violation or damage already suffered is not destructive of the cause of action. No wrong need be proved. The existence of a claim, or the threat of a possible claim, disturbing the peace of the plaintiffs' freedom by casting doubt or uncertainty upon their rights or status, establishes the requisite condition of justiciability. N.J.S. 2A:16-52; Trustees of Rutgers College in N.J. v. Richman, 41 N.J. Super. 259 (Ch. Div. 1956); compare Jamouneau v. Harner, 16 N.J. 500 (1954), certiorari denied 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955); Blackman v. Iles, 4 N.J. 82 (1950); Abelson's, Inc. v. New Jersey State Board of Optometrists, 5 N.J. 412 (1950). In fact, an action under the Declaratory Judgments Law is ordinarily limited in its application to "cases where rights had not yet been invaded or wrongs yet committed to the extent of actionable damage." Adams v. Atlantic City, 26 N.J. Misc. 259, 261, 59 A.2d 825, 826 (Sup. Ct. 1948). A controversy exists in the case sub judice if any or all of the plaintiffs will be affected by enforcement of the Law Against Discrimination (N.J.S.A. 18:25-1 et seq.).
A plaintiff must have an interest in the subject matter in order to maintain a suit for declaratory judgment. *252 Bergen County v. Port of New York Authority, 32 N.J. 303 (1960). This relation to the cause is necessary to a finding that a controversy, or at least uncertainty, exists as to the status or right of the plaintiffs. It is the finding of both justiciability and standing which forms the basis for relief under the Declaratory Judgments Law.
Two of the three plaintiffs herein are associations incorporated under Title 15 of the Revised Statutes of this State. As distinct legal entities, these two corporations having nothing to do with the building, sale, lease or rental of real property. They are merely private interest organizations created for the "mutual advantage and cooperation of its members." Although the Declaratory Judgments Law empowers a corporation to invoke its provisions, N.J.S. 2A:16-50,
"* * proceedings thereunder are necessarily restricted by the general rule of law requiring the prosecution of all actions to be in the name of the real party in interest  a person `whose rights, status or other legal relations are affected' [N.J.S. 2A:16-53] by the statutes in question * *" New Jersey Bankers Ass'n v. Van Riper, 1 N.J. 193, 196 (1948).
It is difficult to envision how the two corporate plaintiffs, apart from their individual members, can bring themselves as violators within the enforcement provisions of the Law Against Discrimination. The law in question has to do solely with the rights and obligations of builders, owners, lessors, brokers and developers of land. It thus appears that the corporations are not legally competent to maintain this action.
Further, the prosecution of this suit by the plaintiff corporations cannot be justified on the theory that they sue as representatives of a class.
"Implicit in the doctrine of virtual representation is the requirement that the representative be in fact a member of the class he is undertaking to represent * * *" New Jersey Bankers Ass'n v. Van Riper, supra, 1 N.J., at p. 197; R.R. 4:36-2. *253 That the plaintiff corporations are not themselves members of the class affected by the subject matter in controversy is self-evident.
In Newark Twentieth Century Taxicab Ass'n v. Lerner, 11 N.J. Super. 363 (Ch. Div. 1951), the plaintiff, a corporate association, had been formed by a number of taxicab drivers for the good and welfare of its members. The corporation negotiated for the purchase of liability insurance for taxicabs owned by individual members of the corporation. These policies were issued by the defendant mutual insurance company to the individual members of the plaintiff corporation who severally and directly paid premiums to the defendant. The corporation owned no taxicabs and held no insurance issued by the defendant. The corporation brought an action against the insurance company, charging that its officers had committed alleged wrongs against the members of the plaintiff association. The court held that the association was not entitled to maintain the action because it had no property right or interest in respect to the funds, property or assets of the insurance company, and that the action could not be maintained as a class action. It was emphasized that "One may not have judicial redress in respect of a matter in which he is without interest, right or duty." 11 N.J. Super., at p. 366.
It was considered "fundamental" in the case of Baxter v. Baxter, 43 N.J. Eq. 82, 86 (Ch. 1887), affirmed 44 N.J. Eq. 298 (E. & A. 1888), that "* * * [c]ourts do not listen to parties who complain of wrongs done to others but not to them. In such a case there is no justiciable controversy between the parties before the court." Brown v. Ramsey, 185 F.2d 225, 227 (8 Cir. 1950).
The court is cognizant of the fact that it is convenient to have the two corporate associations prosecute the case sub judice on behalf of the many builders, developers and real estate brokers, etc., who belong to these member organizations, but the law as it exists in this State does not permit a plaintiff so remotely related to sue, either on behalf of itself or on behalf of its members. This is true even though suit is *254 brought under the liberal provisions of the Declaratory Judgment Law. Accordingly, the complaint is dismissed as to the plaintiffs New Jersey Home Builders Association and the New Jersey Association of Real Estate Boards, for a lack of standing to sue.
The individual coplaintiff, Montoro, is engaged in the business of constructing dwellings and other structures. He is also a licensed real estate broker with licensed salesmen in his employ. By virtue of the Law Against Discrimination he runs the risk of being found guilty of violating its provisions. Enforcement by the State through appropriate legal proceedings could very well cause Montoro irreparable harm. See Lucky Calendar Co. v. Cohen, supra.
In the case of New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949), plaintiff Turnpike Authority brought a declaratory judgment action seeking a determination of the constitutionality of the Turnpike Authority Act (N.J.S.A. 27:23-1 et seq.) prior to the issuance of up to $175,000,000 in bonds to finance the Turnpike. The Authority alleged in its complaint that the Turnpike Authority Act was in contravention of Article VIII, Section II, paragraph 3, of the Constitution of 1947, which limited the state debt. No litigation was pending at the time of the suit for declaratory judgment. Our Supreme Court held that the Authority had a sufficient interest to maintain the suit and, further, that an actual controversy existed which was ripe for judicial determination.
As in the Turnpike case, plaintiff Montoro makes no pretense of complying with the questioned legislation. Admittedly, there has been no attempt to enforce the Law Against Discrimination with respect to Montoro. However, public officers and agents are duty-bound to carry out the functions of their offices by enforcing the law. State v. Winne, 12 N.J. 152 (1953). It would be a meaningless act to require Montoro to violate the Law Against Discrimination, either intentionally or unintentionally, in order to allow him the opportunity of seeking a determination of its constitutionality. It is *255 in this very type of situation that the Declaratory Judgments Law has its greatest significance.
It is the opinion of the court that Montoro, as a builder, has a sufficient interest in the outcome of this case to maintain this action. Further, an actual controversy does exist in regard to the constitutionality of the relevant provisions of the Law Against Discrimination and is found by the court to be ripe for determination.

II.
The plaintiff contends the Law Against Discrimination represents an invidious and discriminatory exercise of the legislative function, contrary to organic law, state and federal.
Article I, paragraph 5, of the Constitution of 1947 provides that
"No person shall be denied the enjoyment of any civil * * * right * * * because of religious principles, race, color, ancestry or national origin."
This constitutional mandate is implemented by N.J.S.A. 18:25-4, which declares that the opportunity to obtain all the accommodations and facilities of publicly-assisted housing and other real property shall be a civil right.
The Law Against Discrimination was twice held constitutional by the Supreme Court of New Jersey. The first case to arise was Levitt & Sons, Inc. v. Division Against Discrimination, etc., 31 N.J. 514 (1960), appeal dismissed for lack of a federal question, 363 U.S. 418, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960). There our Supreme Court expressly held that the law prohibiting discrimination in "publicly assisted housing" is not an unreasonable and arbitrary classification in violation of the equal protection clause of the Fourteenth Amendment to the Federal Constitution and Article I, paragraph 1 of the New Jersey Constitution. The questions of *256 due process and the exercise of the police power, although not considered in the Levitt case, were squarely faced in Jones v. Haridor Realty Corp., 37 N.J. 384 (1962). There the Supreme Court determined that the Law Against Discrimination, as it applies to "publicly assisted housing," is a reasonable exercise of the police power and hence not violative of the due process clause of the Fourteenth Amendment to the Federal Constitution.
The Levitt and Jones cases are dispositive of any challenge to the Law Against Discrimination on the basis of a violation of Fourteenth Amendment rights, as the law applies to publicly-assisted housing. The mere fact that the complainant in the instant case is a builder and real estate broker, rather than a housing developer, is not a basis for further challenge on the same grounds raised in the prior two cases.
Before considering the merits of the plaintiffs' claims remaining, it must be observed that a presumption arises in favor of the constitutionality of a statute and the burden of proof and persuasion rests heavily on the party contesting. Gibraltar Factors Corp. v. Slapo, 23 N.J. 459 (1957); see Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). In addition to this already difficult burden, one who assails a statute on the ground that it contravenes the equal protection clause "must contend with principles of unusual elasticity." New Jersey Restaurant Ass'n v. Holderman, 24 N.J. 295, 300 (1957).
The initial inquiry by the court is whether the Legislature can act with regard to discrimination in private housing, for it is only if this question is answered in the affirmative that the court can then proceed to the question of the reasonableness of the means adopted to effectuate the legislative intent in the area dealt with.
"To justify the state in * * * interposing its authority in behalf of the public, it must appear  First, that the interests of the public * * * require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, *257 and not unduly oppressive upon individuals." Lawton v. Steele, 152 U.S. 133, 137, 14 S.Ct. 499, 38 L.Ed. 385 (1894).
Historically, racial, religious and national prejudices, which show themselves in a variety of overt forms of discrimination, have been the subject of major concern to government on the federal, state and local levels. It is a well recognized fact that discrimination in housing, as an evil, cannot be distinguished from the evils of discrimination in education and business.
The problems born of discrimination in housing, particularly against Negroes, are particularly acute.
"They are * * * compelled in large numbers to live in circumscribed areas under substandard, unhealthy, unsanitary and crowded living conditions. These conditions in turn produce disease, increased mortality, unstable family life, moral laxity, crime, delinquency, risk of fire, loss of tax revenue and intergroup tensions. See Levitt, supra, 31 N.J., at p. 531; Berman v. Parker, 348 U.S. 26, 32, 75 S.Ct. 98, 99 L.Ed. 27 (1954); 5 N.Y. City Charter & Code § W41-1.0; Report, United States Commission on Civil Rights, Housing, supra, 1-4; Report, United States Commission on Civil Rights, 1959, p. 534. Standards of sanitation have to be sacrificed because strict enforcement of building and health codes will simply make a great many people homeless. See `State Action,' 14 Stan. L. Rev. 3, 47 (1961). All of these things imperil the tranquillity of a community. In addition, substandard and segregated housing seriously complicates the problem of public school integration." Jones v. Haridor Realty Corp., supra, 37 N.J., at p. 392.
Beyond question, the evil here sought to be corrected is one which directly affects the public health, safety, morals and welfare. See "Minority Housing," 46 Cornell L.Q. 194 (1961); U.S. Commission on Civil Rights, Housing, (1961), City of Newark v. Charles Realty Co., 9 N.J. Super. 442, 453-456 (Law Div. 1950).
A state may not, in any way, participate in discriminatory acts, nor may it use its courts to enforce obligations which result in discrimination in housing violative of the Fourteenth Amendment to the Federal Constitution. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). *258 It is but a logical step from the state's negative role in this field to its positive role of actively prohibiting discrimination in housing.
The significant issue remaining is whether the legislative intent to eradicate discrimination in housing has been reasonably placed into effect. Plaintiff contends that the Law Against Discrimination is unconstitutional in that: (1) the cited exceptions to the operation of the declared statutory policy, N.J.S.A. 18:25-5(l)(1), (2) and (3), applicable to "other real property," as defined in N.J.S.A. 18:25-5(l), are expressly made inapplicable to "publicly assisted housing accommodations," as defined in N.J.S.A. 18:25-5(k); and (2) considering "other real property" as a separate and distinct class in itself, the exemption of the properties defined in N.J.S.A. 18:25-5(l) from the force of the expressed policy renders such classification equally void and ineffective as arbitrary and capricious, making for a difference in treatment at odds with the essential principle to be served.
It is the function of the court to determine if there has been a reduction of constitutional guarantees by virtue of the Law Against Discrimination. Care must be taken in this dilemma to preclude any whittling away of constitutional rights. Simply calling a categorization of persons or things a "classification" does not satisfy the requirements of equal protection. Gulf, Colorado & Santa Fe Ry. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1897). The inclusions and exceptions of the Law Against Discrimination must be based upon material and substantial distractions and differences reasonably related to the purpose and subject matter thereof. Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949); Hartford Steam Boiler Inspection and Ins. Co. v. Harrison, 301 U.S. 459, 57 S.Ct. 838, 81 L.Ed. 1223 (1937); Morey v. Doud, supra. Only by the court's strict adherence to this requirement will individuals and their property be safeguarded from an abuse of the police power of the State. Singer Sewing Machine Co. v. New Jersey Unemployment Compensation Comm'n, 128 N.J.L. *259 611 (Sup. Ct. 1942), affirmed 130 N.J.L. 173 (E. & A. 1943).
The Legislature has included within the sphere of the Law Against Discrimination certain classes of private housing, as previously set forth. Undeniably, this step has not exhausted the entire area, as evidenced by the listed exceptions. Nevertheless, it does represent a legislative choice to proceed in a manner consistent with what is believed to be the immediate public need. In essence, plaintiff's objection is that the enumerated classes are too small and should have included the entire area of discrimination in private housing.
In Patsone v. Pennsylvania, 232 U.S. 138, 34 S.Ct. 281, 58 L.Ed. 539 (1914), an alien contested the constitutionality of a state law which prohibited the killing of wild game by unnaturalized foreign-born residents. Because the statute did not apply to anyone else, the defendant made the same objection repeated here by plaintiff builder, i.e., that the statute denied equal protection in that it arbitrarily imposed restrictions on a few people without imposing similar restrictions on others who were indistinguishable in their likelihood to commit the offense. Notwithstanding the fact that there was no evidence to offset defendant's argument, the conviction was affirmed. Justice Holmes, speaking for the majority, observed:
"A lack of abstract symmetry does not matter. The question is a practical one, dependent upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named." (232 U.S., at p. 144, 34 S.Ct., at p. 282, 58 L.Ed. 539, emphasis added)
The boldness of Justice Holmes' position when considering the complete and utter lack of evidence distinguishing the affected from the unaffected persons weighs heavily in the decision of this court. Although there was dictum in the Patsone case to mitigate the rigor of the quoted phrase, the case has generally been followed. Morey v. Doud, supra; *260 Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); McCabe v. Atchison, T. & S.F. Ry. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169 (1914); Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); Kotch v. Board of River Port Pilot Comm'rs, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); New Jersey Restaurant Ass'n, Inc. v. Holderman, supra; Levitt & Sons, Inc. v. Division Against Discrimination, supra; cf. Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199 (1960).
In the case of Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949), a municipal regulation forbade the use of panelled delivery vehicles for advertising purposes. An exception was made when the advertisement was connected with the business of the trucking company itself. The purpose of the law was to lessen road hazards by reducing eye-catching distractions. The ordinance was attacked as a denial of equal protection. Although it was not denied that trucks advertising their own products or services were no less likely to distract attention than vehicles advertising the products of other businesses, the United States Supreme Court sustained the ordinance, employing language followed in the Levitt case: "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." (336 U.S., at p. 110, 69 S.Ct., at p. 466, 93 L.Ed. 533.)
A careful analysis of N.J.S.A. 18:25-5(l) reveals that the Legislature is aiming, at the present, toward the eradication of discrimination of that portion of private housing which, in some of its aspects, is colored by "public" considerations; for instance, the inclusion of ten or more dwellings in a contiguous area, and those dwellings containing accommodations for four or more families, or three or more families if the owner is not the occupant. Conversely, the law is geared to exclude dwellings where the owner occupant would be *261 placed in a relative position of personal proximity to the buyer or tenant. For instance, a room in a private home is excluded. Also, one- or two-family houses are excluded unless they are so grouped as to form a large housing development. The same is true of three-family houses where the owner is an occupant. (All of these presuppose a lack of public assistance.)
The same harmful consequences which flow from discrimination in the sale of dwellings also flow from the rental of housing. This is manifested in the efforts of government to eliminate slums and provide for new middle-income rental projects. Cf. Jamouneau v. Harner, 16 N.J. 500 (1954), which upheld rent controls as a valid exercise of the police power.
What has been said thus far as to the three- or four-family dwelling is equally applicable to developments of one- or two-family houses in a contiguous area containing ten or more such dwellings. The greater evil exists in developments of substantial size. In the interest of clarity, a minimum number of ten contiguous dwellings has been set. See Massachusetts Comm'n Against Discrimination v. Colangelo, 344 Mass. 387, 182 N.E.2d 595 (Mass. Sup. Jud. Ct. 1962), upholding a similar statute prohibiting discrimination in contiguously located housing accommodations.
The included classes of dwellings are, as a general rule, investment properties offered to the public for rental or sale as a commercial venture. This category of housing is clearly distinguishable from small private homes used primarily as private residences.
Ordinarily, vacant land is a commercial asset offered to the public at large for a profit. As investment property, it is devoid of most of the personal proximity which exists in the excluded categories of dwellings. It is of legitimate legislative concern that minority groups should not be deprived of the potential of undeveloped land merely because of their race, color, national origin, etc.
The legislative decision to approach the problem of housing discrimination on a "step by step" basis has been expressly *262 upheld by the highest court of the State. Levitt & Sons, Inc. v. Division Against Discrimination, supra. The portions of the Law Against Discrimination here challenged are but the next logical step as the Legislature advances towards the eventual total eradication of discrimination in housing.
Plaintiff claims that he has been unjustly deprived of private rights including the free alienability and use of his property. Such rights have often been limited by the reasonable exercise of the police power. In the case of Jamouneau v. Harner, supra, rent controls were upheld as a valid exercise of the police power. Therein it was stated that:
"The basic right of private property * * * yields to an overriding public need. There is an ever-increasing demand for accommodation of the right of property and of contract to the inexorable needs and pressures of our complex economy and intricate social organism. The vital community interest is paramount." 16 N.J., at p. 514.
Restrictions on private property rights through the imposition of prohibitions on discrimination are not unique. N.J.S.A. 18:25-4 and 5. N.J.S.A. 18:25-5(j) forbids discrimination in such privately owned businesses as hotels, restaurants, taverns, bowling alleys, etc. Employers are forbidden to discriminate in hiring and other procedures. Private labor organizations are similarly restricted. N.J.S.A. 18:25-12(b). Although it was in another context, the United States Supreme Court, in 1962, considered and declared valid a town ordinance prohibiting any excavation below the water table. In effect, the ordinance confiscated the entire mining utility of the defendant's property, its only practical use. Goldblatt v. Town of Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). See Massachusetts Comm'n Against Discrimination v. Colangelo, supra, and 16 Vand. L. Rev. 199 (1962), for lists of regulated private rights in other states.
Even if it be conceded that this issue is in fact a close one, it is consistent with judicial enlightenment to resolve the doubt according to the felicitous words of Justice Frankfurter *263 in the case of Railway Mail Ass'n v. Corsi, 326 U.S. 88, 98, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945) (concurring opinion):
"[A] State may leave abstention from such discriminations to the conscience of individuals. On the other hand, a State may choose to put its authority behind one of the cherished aims of American feeling by forbidding indulgence in racial or religious prejudice to another's hurt. To use the Fourteenth Amendment as a sword against such State power would stultify that Amendment. Certainly the insistence by individuals on their private prejudices as to race, color or creed, * * * ought not to have a higher constitutional sanction than the determination of a State to extend the area of non-discrimination beyond that which the Constitution itself exacts."
A lack of public assistance does not prohibit the application of anti-discrimination laws to housing as the plaintiff contends. The basis for state action in this area is not primarily that public assistance may be supplied. Rather, it is the existence of a form of discrimination inimical with the institutions and principles of free democratic society. Similar statutes have been found to be a constitutional exercise of the police power in New York, California and Colorado. See Massachusetts Comm'n Against Discrimination v. Colangelo, supra; Martin v. City of New York, 22 Misc.2d 389, 201 N.Y.S.2d 111 (Sup. Ct. 1960); Burks v. Poppy Construction Co., 57 Cal.2d 463, 20 Cal. Rptr. 609, 370 P.2d 313 (Sup. Ct. 1962); Colorado Anti Discrimination Comm'n v. Case, Colo., 380 P.2d 34 (Sup. Ct. 1962); New York State Comm. v. Pelham Hall Apartments, 10 Misc.2d 334, 170 N.Y.S.2d 750 (Sup. Ct. 1958). It is only in the State of Washington that a statute prohibiting racial discrimination in the sale of publicly assisted housing was held to be unconstitutional. O'Meara v. Washington State Board Against Discrim., 365 P.2d 1 (Sup. Ct. 1960). Since the Levitt and Jones cases reached the opposite conclusion, the O'Meara case is not even persuasive authority in this State.
The Law Against Discrimination is operative against members of majority groups and minority groups alike. It specifically prohibits discrimination in the sale of real property because of race, creed, color or national origin. N.J. *264 S.A. 18:25-4, 12. Thus, a member of a minority race can be guilty of discrimination against a member of the majority. That prevalent circumstances would make such discrimination less likely does not infect the law with inequality. The law itself is aimed at the protection of all races, colors and creeds.
Surely, the interest of the seller or lessor of realty in barring undesirables from their neighborhoods should not be extended beyond the realm where the actual conduct of the supposed undesirable would constitute a ground for constructive eviction or a nuisance action. "[T]he greater good for the greater number must prevail and individual inconveniences must be suffered as the price to be paid for living in a well-ordered society." Gundaker Central Motors v. Gassert, 23 N.J. 71, 78 (1956).

III.
Plaintiff contends, finally, that the Law Against Discrimination, insofar as it purports to authorize the Commissioner of Education to compel builders to erect homes for persons designated by him, the Law creates an involuntary servitude or a form of peonage, in disregard of the Thirteenth Amendment of the United States Constitution and the pertinent federal statutes.
The powers of the Commissioner to make findings and issue orders are delineated in N.J.S.A. 18:25-17, which states in part as follows:
"If, upon all the evidence at the hearing the commissioner shall find that the respondent has engaged in any * * * unlawful discrimination as defined in this act [sections 18:25-1 to 18:25-28], the commissioner shall state his findings of fact and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such * * * unlawful discrimination and to take such affirmative action, including, but not limited to, * * * extending full and equal accommodations, advantages, facilities, and privileges to all persons, as, in the judgment of the commissioner, will effectuate the purpose of this act, and including a requirement for report of the manner of compliance." *265 Should the Commissioner's order be ignored, he must seek its enforcement through the courts.
"Observance of an order of the commissioner may be enforced by a civil action in the County Court to compel the specific performance of the order or of the duties imposed by law upon the respondent named in the order." N.J.S.A. 18:25-19.
In addition, any decision of the Commissioner is the subject of judicial review.
"Any person aggrieved by a final order of the commissioner may take an appeal therefrom to the County Court of the county in which the alleged * * * unlawful discrimination took place." N.J.S.A. 18:25-21.
N.J.S.A. 18:25-26 declares that a willful violation of a Commissioner's order shall be a misdemeanor punishable by fine or imprisonment. This section also states that procedure for the review of the order shall not be deemed to be such willful conduct.
The Commissioner has been given broad authority to effectuate the worthy objective of the Law Against Discrimination. However, a detailed study of the statute reveals that nowhere in the terms is the Commissioner given the power, right or duty to compel a builder to construct a new dwelling for a particular complainant. Notwithstanding this fact, it is strenuously urged by plaintiff that the "existence" of this power is a basis for declaring the law unconstitutional. He is simply assuming that such an order will be issued by the Commissioner.
The substantive content of an order cannot be determined until the Commissioner has gathered the evidence and made his findings N.J.S.A. 18:25-17. Only after the order has been issued do the questions of whether it is a valid exercise of the Commissioner's power and its constitutionality come into being. That plaintiff is curious or even fearful about a possible future order is not a basis for imposing upon the court, by virtue of the Declaratory Judgments Law *266 (N.J.S. 2A:16-50 et seq.), the burden of answering questions of law which may or may not arise in the future. 1 Anderson, Declaratory Judgments (2d ed. 1951), § 224; accord First Camden Nat. Bank & Trust Co. v. Wilentz, 129 N.J. Eq. 333 (Ch. 1941); West v. Bank of Commerce and Trusts, 153 F.2d 566 (4 Cir. 1946).
The Thirteenth Amendment issue is considered only with reference to the statute on its face. See United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). It clearly does not violate the Thirteenth Amendment. Within its terms, there is no compulsion towards involuntary servitude or peonage. That the Commissioner may act in a manner in excess of the authority vested in him, by virtue of the Law Against Discrimination, is not a basis for declaring the statute unconstitutional. The question concerning the validity of an order compelling a builder to erect a new home will not be passed upon until it is appropriately presented.
Judgment is rendered in favor of defendant on all other counts for the reasons hereinbefore stated.