Mohammed **YOUNUS** et al., Plaintiffs,

v.

Oscar E. **SHABAT** et al., Defendants.

No. 71 C 1423.

United States District Cocurt,
N. D. Illinois, E. D.

Nov. 16, 1971.

Roger Pascal and Joseph R. Lundy,
Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., for plaintiffs.

Roger J. Kiley, Jr., and Lawrence T. Stanner, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

This is a suit for a declaratory judgment and injunctive relief brought by Mohammed Younus and Pete Alexopoulos, two resident aliens who are teaching in the Chicago City College System. Named as defendants are the Board of the Junior College District No. 508, Cook County, Illinois ("Board"), and the Board's Chancellor, Oscar E. Shabat.

Plaintiff Younus is a citizen of India who was lawfully admitted for permanent residence in the United States in 1968. 8 U.S.C. § 1101(a) (20). Plaintiff Alexopoulos is a citizen of Greece who was lawfully admitted for permanent residence in the United States in 1967. 8 U.S.C. § 1101(a) (20).

Both plaintiffs teach at Southwest College, one of the colleges in the Chicago Junior College System. The gravamen of the complaint is that defendants have refused to grant plaintiffs tenured positions on the faculty of Southwest College solely because of their status as aliens, in violation of the Fourteenth Amendment to the Constitution and the Federal Civil Rights Act. 42 U.S.C. § 1983.

This matter has been submitted to the court on the basis of the complaint, a motion for a preliminary injunction, a motion to dismiss, and various briefs in support of the parties' respective positions. Defendants have stipulated that for purposes of a final disposition of this matter, the allegations of the complaint may be accepted as true. The allegations demonstrate that Younus became eligible for tenure in February, 1971, and that Alexopoulos became eligible in September, 1970. They also show that the chairmen of plaintiffs' respective departments recommended tenure for them, which recommendation was concurred in by the President of Southwest College. Plaintiffs allege, and defendants concede, that the sole reason why Younus and Alexopoulos were denied tenure was their status as resident aliens.

The policy of not granting tenure to alien teachers is embodied in Appendix D, Paragraph 3 of the agreement entered into between the Board and the Cook County Teachers Union, Local 1600 ("Union"). See ¶ 8 of the Complaint. That policy was carried forward in Rule 2–9 promulgated by the Board. See ¶ 9 of the Complaint. Now, however, a new agreement has been entered into by the Board and the Union with respect to the issue of non-tenured aliens, the effect of which is to require defendants to make a decision by December 31, 1971, as to whether plaintiffs are to be granted tenure despite their alienage:

> [T]he decision to continue the employment of an otherwise eligible non-citizen faculty member who would otherwise be eligible for evaulation for a tenured contract will be made on or before December 31, 1971, and such non-citizen faculty member will receive notice of such decision to grant him a tenured contract or to terminate his employment on March 1. The faculty member will have until April 1 to indicate to his College President his desire to terminate or continue his employment.

The issue posed by the new provision is whether plaintiffs' case is moot. Defendants must decide within two months whether plaintiffs are to be granted tenure, and if not, they are to be terminated. While the court cannot predict the Board's decision, it nevertheless would find it difficult to imagine any decision other than one granting tenure to both plaintiffs, based on past recommendations of the heads of plaintiffs' departments. Even assuming that on March 1, 1972, both plaintiffs were notified that they were being granted tenure, still the case would not be moot. Except for their alienage, plaintiffs have been qualified for tenure for some time now, and during that time they have been denied the amenities which

accompany tenure, in particular, a larger salary and eligibility for sabbatical leave. Thus, to leave plaintiffs to the remedy set out in the new Union-Board contract would not make plaintiffs whole. The case as it now stands is not moot.

■ Turning to the merits of plaintiffs' claim, it is now settled beyond doubt that the Equal Protection Clause of the Fourteenth Amendment applies not merely to citizens, but to all persons who are lawfully-admitted resident alien. Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). It has also been held that the Equal Protection Clause is applicable to the employment conditions of teachers in public colleges. See Rainey v. Jackson State College, 435 F.2d 1031 (5th Cir. 1970); Trister v. University of Mississippi, 420 F.2d 499 (5th Cir. 1969); See also, Shirck v. Thomas, 447 F.2d 1025 (7th Cir. 1971); Roth v. Board of Regents of State Colleges, 446 F.2d 806 (7th Cir. 1971). The application of the Equal Protection Clause to aliens was recently spelled out in Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), where the court stated:

> Under traditional equal protection principles, a State retains broad discretion to classify as long as its classification has a reasonable basis. (citations). This is so in "the area of economics and social welfare." Dandridge v. Williams, 397 U.S. 471, 485, [90 S.Ct. 1153, 1161, 25 L.Ed.2d 491] (1970). But the Court's decisions have established that classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a "discrete and insular" minority (see United States v. Carolene Products Co., 304 U.S. 144, 152–153 n. 4, [58 S.Ct. 778, 783–784, 82 L. Ed. 1234] (1938)) for whom such heightened judicial solicitude is appropriate. Accordingly, it was said in *Takahashi* [v. Fish & Game Commission], 334 U.S. [410], at 420 [68 S.Ct.

1138, at 1143, 92 L.Ed. 1478] that ". . . the power of a state to apply its laws exclusively to its alien inhabitants as a class is confined within narrow limits." 403 U.S. at 371–372, 91 S.Ct. at 1852.

■ Graham v. Richardson involved state welfare laws which discriminated against welfare applicants on the basis of their alienage. Those laws, which made eligibility contingent upon United States citizenship or upon an alien's residing in the country for a specified number of years, were held to deny alien welfare applicants equal protection of the laws. While the instant case involves eligibility for tenured status in a state college system, rather than eligibility for state welfare payments, the principles of Graham v. Richardson are fully applicable to this case.

■ Defendants argue that their restriction upon granting tenure to alien teachers "bear[s] some rational relationship to a legitimate state end." McDonald v. Board of Election Commissioners, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969). This is but another way of saying that the State has a "special public interest" in favoring its own citizens over aliens in the distribution of limited public resources. The continuing validity of the special public interest doctrine has been brought into question recently. See Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Takahashi v. Fish & Game Commission, 334 U.S. 410, 420, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948). However, whatever the present status of the special public interest doctrine, it is clear that defendants have failed to put forward any acceptable justification for discriminating against plaintiffs.

Defendants main reason for discriminating against plaintiffs is the so-called national interest which the state has in providing its own citizens with work. By not granting plaintiffs tenure, they can be laid off work in the event of an economic slowdown. Were they tenured,

then non-tenured employees, many of whom would inevitably be citizens, would be laid off before the alien plaintiffs. Defendants argue that the employment of alien teachers at a time when citizen teachers are out of work is not in the national interest.

The so-called "national interest" justification was advanced and rejected in Graham v. Richardson. In that case defendants argued that national interest required the states to devote their limited welfare funds to citizens first and only afterward to aliens. In rejecting defendants' argument, the court said:

> Since an alien as well as a citizen is a "person" for equal protection purposes, a concern for fiscal integrity is no more compelling a justification for the questioned classification in these cases than it was in *Shapiro* [v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)]. 403 U.S. at 375, 91 S.Ct. at 1853.

In the same vein, I think that the concern for fiscal integrity is so nominal in this case as to render nugatory defendants' justification of the denial of tenure.

Defendants also attempt to justify their dual classification on the ground that other public bodies discriminate against aliens as well. What others may do does not, of course, justify a classification which denies these plaintiffs equal protection. Moreover, plaintiffs research has persuasively rebutted defendants' allegation that other public institutions discriminate against lawfully-admitted resident aliens in their employment policies. This attempt to justify defendants' discrimination fails for lack of a rational basis.

■ Finally, defendants attempt to justify their refusal to grant tenure to plaintiffs on the ground that, as aliens, their allegiance to the principles of the United States remains questionable. However, the whole import of Section III of Graham v. Richardson is to the effect that in the area of immigration, the national government has to a great extent preempted the field of legislation, and that to the extent state laws and regulations are inconsistent therewith, the latter cannot stand. The Immigration and Nationality Act already makes suitable provision for excluding those persons with questionable allegiance. 8 U.S.C. § 1182(a) (27), (28), (29). The additional burden placed upon immigrants by defendants is nowhere provided for in the Immigration and Nationality Act, thus the restriction upon tenure cannot be justified on the ground of plaintiffs' alleged questionable allegiance.

For the foregoing reasons, defendants have failed to justify their refusal to grant tenure to plaintiffs on the ground of their alienage. Accordingly, judgment is entered declaring that plaintiffs, from this day forward, are to be accorded the same rights as tenured teachers enjoy. In addition, defendants are ordered to tender to plaintiffs employment contracts which secure to plaintiffs tenured status, in the case of plaintiff Younus retroactive to February, 1971, and in the case of Alexopoulos retroactive to September, 1970, and in both cases continuing through the academic year 1971–1972. Defendants are further ordered to award plaintiffs the difference between the salaries they actually earned and the salaries they would have earned if they had been granted tenure on their respective dates of eligibility. In general, plaintiffs are to be awarded all privileges which accompany tenured status, retroactive to their respective dates of eligibility.