Maria Theresa **MIRANDA**, by her Next Friend and paternal grandmother, **Rosa Miranda**, on behalf of herself and all others similarly situated, Plaintiffs,

v.

Gary K. **NELSON**, Attorney General, State of Arizona, et al., Defendants.

Marion A. **HUXTABLE**, on behalf of herself and all others similarly situated, Plaintiffs,

v.

Gary K. **NELSON**, Attorney General, State of Arizona, and John Posegate, Chairman, Arizona State Personnel Commission, Defendants.

Nos. Civ. 71–154 TUC, 71–161 TUC.

United States District Court, D. Arizona.

Dec. 5, 1972.

Delane C. Carpenter, Pima County Legal Aid, Tucson, Ariz., for Miranda and others.

John S. O'Dowd, Asst. Atty. Gen., of Ariz., William Brammer, Jr. Deputy County Atty. for Pima County, Tucson, Ariz., for Nelson and others.

Norval Jasper, Tucson, Ariz., for Huxtable and others.

Before TRASK, Circuit Judge, and WALSH and EAST, District Judges.[*]

EAST, Senior District Judge:

The above two causes were consolidated for hearing and determination for the reason that the contentions and issues of law are in common to the respective factual situations of the parties.

The parties have filed their written stipulation of agreed facts and each have moved for summary judgment in their respective favor, pursuant to Rule 56, Federal Rules of Civil Procedure. The parties have submitted their memoranda of law in support thereof, and the Court has heard counsel orally.

## FACTS

It appears from the stipulation of the facts and we find that:

1. Plaintiff Maria Theresa Miranda (Maria) is presently eighteen years of age and holds the status of a permanent resident alien continuously residing in the State of Arizona, for a period of over fifteen years.

2. Defendant, Gary K. Nelson, is the Attorney General of the State of Arizona (Attorney General) and charged by Arizona law with the duty of interpreting and enforcing the laws of the State of Arizona.

3. Defendant, Arizona State Board of Education (Board) is charged by Arizona law with the duty of supervising the State's public school systems.

4. Defendant, Weldon P. Shofstall, is the Arizona Superintendent of Public Instruction (State Superintendent), charged by Arizona law with the duty of superintending all of the State's public schools.

5. Defendant, Anita Lohr, is the Pima County, Arizona Superintendent of Schools (County Superintendent), charged by Arizona law with the duty of superintending all of Pima County's public schools.

6. Defendant, Tucson School District No. 1 is a public school district situated within Pima County, Arizona; organized under the laws of the State of Arizona (District) and charged by Arizona law with the duty of supervising and administering the affairs of the District's public schools.

7. In September, 1971, Maria applied for part time employment with District in a Work-Study Program sponsored by District under the Vocational Education Act, Chapter 32, 20 U.S.C. § 1241 et seq.; particularly Subchapter VIII, 20 U.S.C. § 1371 et seq.

8. Maria qualified at that time, and continues to qualify, to meet all requirements for enrollment in the federally sponsored and subsidized program pursuant to criteria enumerated in 20 U.S.C. § 1372(b)(1), (2); she filled out and submitted the required Application for Employment; however, she did not indicate whether or not she was a citizen of the United States and complied with all regulations required by District and all other State regulations pertaining to said employment.

9. Maria was accepted for employment in early October, 1971, and commenced to perform duties as an office clerk in the Business Education Office at Pueblo High School, where she is enrolled as a student in the eleventh grade,

---

[*] Honorable Ozell M. Trask, United States Circuit Judge for the Ninth Circuit, James A. Walsh, Chief Judge, United States District Court for the District of Arizona, William G. East, Senior United States District Judge for the District of Oregon, constituting a statutory three-judge district court by designation of Chief Judge Richard H. Chambers for the Ninth Circuit, dated December 30, 1971 and February 3, 1972.

and continued to perform her employment duties satisfactorily, working seven hours per week at a rate of One Dollar and Sixty Cents ($1.60) per hour, until November 23, 1971.

10. On November 23, 1971, Maria was notified by the Personnel Office of District that her employment was being terminated for the sole reason that she was a non-citizen of the United States.

11. Plaintiff Marion A. Huxtable (Marion) is presently twenty-eight years and eight months of age and is an alien, a national of the United Kingdom, residing in the State of Arizona, having the status of a permanent resident according to the laws of the United States, and the holder of a permanent visa dated July 9, 1971. She is and has been continuously since November, 1970, a resident of Arizona. Prior thereto she had resided in other states of the United States since September, 1968.

12. Defendant, John Posegate, is the Chairman of the Arizona State Personnel Commission (Chairman), and is charged by law with the duty of interpreting and enforcing the laws of the State of Arizona insofar as they apply to the Commission and is charged with the enforcement of the Rules and Regulations promulgated by Commission and other laws, regulations and proclamations relating to examination and appointment to State jobs under the Commission.

13. On December 28, 1970, Marion applied to the Commission for employment in the positions Social Service Worker, I, II or III, and Teacher, Academic and Special, employment in both of which positions are administered by the Commission, applicable Regulations requiring that applications for said positions must be submitted to the Commission before the applicant's name could be forwarded to the public agencies which were attempting to fill the desired positions. The applications were returned to Marion by the Commission, Employment Division, on January 5, 1971, with the printed form stating, "Applicants for employment in Arizona State Service must be United States citizens."

14. Marion has at all times complied with the conditions governing her admission to the United States for permanent residence and intends to apply for United States citizenship. She has not applied for and does not desire to be employed in any position involving the internal or external security of the United States or any position for which a special security clearance is required.

## APPLICABLE STATE LAWS

The parties conceded that the defendants in their respective capacities acted and performed as above found pursuant to and under the color of Article 18, Section 10 of the Constitution of Arizona, A.R.S., as amended (Art. 18, Sec. 10) and Arizona Revised Statutes, Section 38–201, subsec. B, as amended (Sec. 38–201, subsec. B).

Art. 18, Sec. 10 provides:

"No person not a citizen or ward of the United States shall be employed upon or in connection with any state, county or municipal works or employment; provided, that nothing herein shall be construed to prevent the working of prisoners by the state or by any county or municipality thereof on street or road work or other public work and that the provisions of this section shall not apply to the employment of any teacher, instructor, or professor authorized to teach in the United States under the teacher exchange program as provided by federal statutes enacted by the Congress of the United States or the employment of university or college faculty members. The legislature shall enact laws for the enforcement and shall provide for the punishment of any violation of this section." As amended, election Nov. 8, 1960; proclamation date— Dec. 9, 1960;

and Sec. 38–201, subsec. B provides:

"No person is eligible to any office, employment or service in any public institution in the state, or in any of

the several counties thereof, of any kind or character, whether by election, appointment or contract, unless he is a citizen of the United States, but the provisions of this subsection shall not apply to the employment of any teacher, instructor or professor authorized to teach in the United States under the teacher exchange program as provided by federal statutes or the employment of university or college faculty members."

## CONTENTIONS

Maria and Marion each contend that Art. 18, Sec. 10, and Sec. 38–201, subsec. B, contravene the United States Constitution and that the action taken thereunder by the defendants, respectively, deprive Maria and Marion of their respective rights and immunities under the Equal Protection and Supremacy Clauses. They each seek declaratory judgment and injunctive relief therefrom.

## JURISDICTION

 The jurisdiction of this Court is noted under 28 U.S.C. 1331, 1343(3), 1651, 2201, 2281 and 2284, and abstention is considered improper. Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed2d 257 (1972).

## DISCUSSION

The defendants would justify their respective actions in discharging Maria from employment and rejecting the application of Marion for employment solely on the grounds of existing alienage under the authority of McCready v. Virginia, 94 U.S. 391, 24 L.Ed 248 (1876); Yick Wo v. Hopkins, 118 U.S. 356, 6 S. Ct. 1064, 30 L.Ed. 220 (1886); Patsone v. Pennsylvania, 232 U.S. 138, 34 S.Ct. 281, 58 L.Ed. 539 (1914); Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915); Heim v. McCall, 239 U.S. 175, 36 S.Ct. 78, 60 L.Ed. 206 (1915); and Crane v. New York, 239 U.S. 195, 36 S.Ct. 885, 60 L.Ed. 218 (1915). Those authorities sponsored a state's right to distinguish between its citizens as one class and its resident aliens as another class in the allocation and distribution of public wealth and resources, holding to a concept that a state had a "special public interest" in protecting and preserving its wealth and resources for its citizens.

The mainstays of that concept of "special public interest" have been eroded to splinters by Takahashi v. Fish & Game Commission, 334 U.S. 410, 68 S. Ct. 1138, 92 L.Ed. 1478 (1948); Purdy & Fitzpatrick v. California, 71 Cal.2d 566, 79 Cal.Rptr. 77, 456 P.2d 645 (1969); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); and Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.E.2d 534 (1971). These later authorities recognize that a state does have valid interest in its resources and fiscal affairs and may legitimately limit its fiscal outlays and protect its resources, but a state may not accomplish such purposes by invidious distinctions and discrimination between classes of its inhabitants. It can be said that under the rationale as developed in *Purdy & Fitzpatrick,* supra, and *Shapiro,* supra, and further extended in *Graham,* supra, the only avenue to validity for such limitations or restrictions is a showing by the state of a compelling or substantial and rational reason for the same in the protection of a state interest or resource and not resulting in an impairment or destruction of an individual's fundamental or "some sort of right to exist in society."

 Following the rationale of *Graham,* supra, it is manifest that the reasons advanced by Arizona in justification of the apparent discriminatory effect of Art. 18, Sec. 10 and Sec. 38–201, subsec. B upon permanent resident aliens fall far short of being either compelling or substantial or having a rational basis to the protection of Arizona's fiscal interests or resources. Art. 18, Sec. 10 and Sec. 38–201, subsec. B are left standing as barefaced organic law and legislative strict foreclosures of a lawful pursuit of a livelihood and subsistence by a class of persons who may

be otherwise fully qualified to perform the state employment and contribute to society and its needs. See Opinion and Order entered in Teitscheid v. Leopold, et al., 342 F.Supp. 299 (D.Vt.1971).

■■ The Constitution vests in Congress the sole power and authority to determine and grant to aliens right of entry to and residence within the United States and their lawful pursuits therein. Congress has not excluded lawfully entered permanent resident aliens from any lawful pursuit of employment, public benefits or other entitlements, nor service in the armed forces and all benefits flowing therefrom. So it follows that any state legislative attempt to exclude that state's permanent resident aliens from any lawful pursuit of employment or state entitlements and benefits flowing therefrom solely because of alienage, runs afoul of the Supremacy Clause of the Constitution. *Graham,* supra.

It is unnecessary for us to reach the third contention of Maria and Marion, namely; that Art. 18, Sec. 10 and Sec. 38–201, subsec. B violate the provisions of 42 U.S.C. § 2000d.

■ While we are extremely reluctant to declare invalid a constitutional provision of a state before the highest court of that state has had an opportunity to consider the question, it appears that there is no procedural alternative. *Graham,* supra, leaves no choice as a matter of substantive law.

In doing so we would echo the admonition of Judge Lumbard in a similar situation, Dougall v. Sugarman, 339 F. Supp. 906, 911 (S.D.N.Y.1971), probable jurisdiction noted, 407 U.S. 908, 92 S.Ct. 2434, 32 L.Ed.2d 682 (1972) :

"Nothing in our decision should be construed to mean that a state may not lawfully maintain a citizenship requirement for those positions where citizenship bears some rational relationship to the special demands of the particular position. There are some positions in the civil service, as in elective office, where broad policy decisions are made as a matter of course, and in such positions the state and the city, and their citizens, may properly require the officeholder to be a United States citizen." 339 F.Supp. at 911.

## CONCLUSIONS

We conclude that:

■ 1. Art. 18, Sec. 10 and Sec. 38–201, subsec. B and all Regulations and Directives promulgated thereunder are unconstitutional in that the enforcement thereof by the defendants as aforesaid deprive Maria and Marion of their respective rights and immunities under the Equal Protection Clause and further, contravene the Supremacy Clause.

2. The order of the discharge of Maria from her employment on the sole ground of existing alienage should be declared null and void.

3. The order of the rejection of Marion's application for employment on the sole ground of her existing alienage should be declared null and void.

4. The Motions of the Defendants for Summary Judgment should be denied, and the Motions of Maria and Marion, respectively, should be granted.

## RELIEF

Accordingly:

(a) Maria is entitled to a final decree herein declaring the aforesaid order of discharge null and void and setting the same aside, and permanently enjoining and restraining Attorney General, Board, State Superintendent, County Superintendent, District and all persons acting under any of them, from the enforcement thereof and from otherwise enforcing Sec. 38–201, subsec. B and any said regulations thereunder against Maria on the sole ground of her existing alienage. Further, that Maria's employment be reinstated as of the date of her discharge, with all lawful allowances and benefits.

(b) Marion is entitled to a final decree herein declaring the aforesaid order

.. 

of rejection of her application for employment on the sole ground of her existing alienage null and void and setting the same aside, and permanently enjoining and restraining Chairman and all persons acting under him, from the enforcement thereof and from otherwise enforcing Sec. 38–201, subsec. B and any said regulations thereunder against Marion on the sole ground of her existing alienage. Further, that Marion's application for employment be reinstated as of the date of its rejection for lawful processing in its then order and without prejudice to ultimate grade or seniority thereunder.

This memorandum of decision shall stand as the Court's findings of fact and conclusions of law as provided by Rule 52(a) of the Federal Rules of Civil Procedure.