Ernest O. D. MOHAMED, Plaintiff,

v.

Paul PARKS et al., Defendants.

Civ. A. No. 72–3578.

United States District Court,
D. Massachusetts.

Jan. 4, 1973.

Gene R. Shreve and Robert A. James, Boston, Mass., for plaintiff.

Thomas H. Martin, Boston, Mass., for defendants.

## OPINION

TAURO, District Judge.

Plaintiff brings this action under 42 U.S.C. Section 1981 and Section 1983 seeking injunctive and declaratory relief against the enforcement of Chapter 3, Section 12 of the Boston Revised Ordinances of 1961, as amended by Chapter 5 of the Ordinances of 1969. The parties have proceeded on an Agreed Statement of Facts.

Plaintiff is a resident alien of the United States, properly registered with the immigration authorities and currently holding a permanent visa. He has been a resident of the United States since December 4, 1966, and is a United States Army veteran with an honorable discharge.

In September 1972, Plaintiff applied for a staff position with the Boston Model Cities Administration Street Academy, a bi-lingual counseling program designed to assist Spanish-speaking youth with educational and job placement problems. The Street Academy is directed by Defendant John Clark and under the supervision of Defendant Paul Parks. Because of his fluency in English and Spanish, and his experience as an assistant director of a similar program in New York City, the Model Cities evaluating personnel found Plaintiff uniquely qualified for the position. Plaintiff's application was denied, however, solely on the basis of Chapter 3, Section 12 of the Boston Revised Ordinances[1] which restricts municipal employment to "citizens" and forbids the hiring of noncitizens "in any capacity" except that of doctors or nurses in a hospital.

Plaintiff's request for a preliminary injunction was granted ordering the individual Defendants to pass upon Plaintiff's application for positions at the Street Academy without consideration of Chapter 3, Section 12. Counsel waived further oral argument on the merits, submitting on briefs the question of the allowance of the permanent injunction.

Chapter 3, Section 12 violates Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and en-

---

1. Sect. 12. Every officer in charge of a department shall to the best of his ability cause all statutes, ordinances, regulations, and orders relating to the duties of his department to be observed and enforced, and subject to the civil service laws and rules, when applicable, shall employ, fix the compensation of, and may discharge for such cause as he shall deem sufficient and cause to be recorded in the records of his department, all subordinates in his department; provided, however, that none but citizens shall be employed in any capacity—except that alien physicians and nurses may be employed in a hospital or other health care institution under the charge of the board of health and hospitals. * * *

croaches upon the immigration scheme established by Congress. It is, therefore, unconstitutional on its face.

■■ Chapter 3, Section 12 subjects Plaintiff to a separate category of treatment solely on the basis of his status as an alien. It has been settled since 1886 that "the Fourteenth Amendment to the Constitution is not confined to the protection of citizens" but protects resident aliens as well. Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). See also Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S. Ct. 1138, 92 L.Ed. 1478 (1948); Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L. Ed. 131 (1915). And distinctions between aliens and citizens "are inherently suspect and are therefore subject to strict judicial scrutiny whether or not a fundamental right is impaired." Graham v. Richardson, 403 U.S., at 376, 91 S.Ct., at 1854.

In *Graham* a unanimous Supreme Court held unconstitutional, as violative of the Equal Protection Clause, a state statute that denied welfare benefits to aliens. Justice Blackmun, writing for the Court, emphasized (403 U.S., at 372, 91 S.Ct., at 1852):

[C]lassifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a "discrete and insular" minority (see United States v. Carolene Products Company, 304 U.S. 144, 152–153, n. 4, [58 S. Ct. 778, 82 L.Ed. 1234] (1938)) for whom such heightened judicial solicitude is appropriate. Accordingly, it was said in *Takahashi*, 334 U.S., at 420, [68 S.Ct. 1138, 92 L.Ed. 1478], that "the power of a state to apply its laws exclusively to its alien inhabi-

tants as a class is confined within narrow limits." [footnotes omitted].

■ An alien's constitutional right to equal protection cannot be made to depend upon the rejected concept that government benefits were a privilege, not a right, especially since resident aliens are subject to the same obligations as citizens, such as military service and taxes. *Graham*, 403 U.S., at 374, 376, 91 S.Ct. 1848, 29 L.Ed.2d 534. See also Purdy & Fitzpatrick v. California, 71 Cal.2d 566, 79 Cal.Rptr. 77, 456 P.2d 645 (1969), in which the California Supreme Court sitting en banc unanimously held unconstitutional a state law which excluded aliens from employment on public works projects.

In Dougall v. Sugarman, 339 F.Supp. 906 (S.D.N.Y.1971) a three-judge court, adopting the reasoning of *Graham*, declared unconstitutional that section of the New York Civil Service Law restricting Civil Service employment to United States citizens. And a similar statute was held invalid in Teitscheid v. Leopold, 342 F.Supp. 299 (D.Vt.1971), the court writing, 342 F.Supp., at 302, "the denial of employment to aliens denies them equal protection of the law . . . .." See also Younus v. Shabat, 336 F.Supp. 1137 (N.D.Ill.1971), invalidating a restriction on granting tenure to alien teachers as a violation of the Equal Protection Clause.

Defendants have not demonstrated any state interest, let alone one which might be deemed to be compelling, that would justify the classification created by Chapter 3, Section 12.[2]

A wide variety of alleged justifications have been considered and rejected in the cases cited above. Graham v. Richardson, 403 U.S., at 374, 91 S.Ct., at 1853, put to rest the "special public-interest doctrine", concluding "that a State's desire to preserve limited welfare benefits for its own citizens is in-

2. The recent decisions noted above have required classifications on the basis of alienage to pass a "strict judicial scrutiny" test, Graham v. Richardson, 403 U.S., at 376, 91 S.Ct. 1848, 29 L.Ed.2d 534, or a "compelling state interest" test, Purdy & Fitzpatrick v. California, 71 Cal. 2d, at 579, 79 Cal.Rptr. 77, 456 P.2d 645.

adequate to justify Pennsylvania's making noncitizens ineligible for public assistance . . .." Similarly, a "concern for fiscal integrity" cannot justify a classification on the basis of alienage. 403 U.S., at 375, 91 S.Ct. 1848, 29 L.Ed. 2d 534.

In Dougall v. Sugarman, 339 F.Supp. 906, 908 (S.D.N.Y.1971), the court found no merit in defendant's arguments that the exclusion of aliens from public employment was properly related to efficient administration because aliens are less likely than citizens to remain in the state, noting there was no offer of proof on this point. And the court found "particularly shaky" defendant's concern for the loyalty of aliens and the possibility of security risks. 339 F.Supp., at 908 n. 6.

The arbitrariness of the exclusion of aliens from municipal employment is apparent when one considers that an alien who has resided in Boston for a number of years and may well have contributed significantly to the city's development would be precluded, with limited exception, from municipal employment.

■ Chapter 3, Section 12 is unconstitutional as well because it interferes with the exclusive federal right to regulate immigration and naturalization. U.S.Const. Art. VI. Congress has enacted a comprehensive plan for the regulation of immigration and naturalization, and has guaranteed to aliens "the full and equal benefit of all laws . . .." 42 U.S.C. Section 1981 (1970). See Graham v. Richardson, 403 U.S., at 376 et seq., 91 S.Ct. 1848, 29 L.Ed.2d 534.[3]

■ Aliens lawfully within this country have a right to reside in any of our states and may do so with assurance that the laws of this land will be applied to them on the same basis that they are applied to citizens. *Graham*, 403 U.S., at 378, 91 S.Ct. 1848, 1856, 29 L.Ed.2d 534.

The *Graham* court quoted with approval from Truax v. Raich, 239 U.S. 33, 42, 36 S.Ct. 7, 60 L.Ed. 131 (1915), which invalidated a state restriction on the employment of aliens:

The authority to control immigration —to admit or exclude aliens—is vested solely in the Federal Government . . .. The assertion of an authority to deny aliens the opportunity of earning a livelihood when lawfully admitted to the state would be tantamount to the assertion of the right to deny them entrance and abode, for in ordinary cases they cannot live where they cannot work. And, if such a policy were permissible, the practical result would be that those lawfully admitted to the country under the authority of the acts of Congress, instead of enjoying in a substantial sense and in their full scope the privileges conferred by the admission, would be segregated in such of the states as chose to offer hospitality.

See also Dougall v. Sugarman, 339 F. Supp. 906, 910 (S.D.N.Y.1971); Teitscheid v. Leopold, 342 F.Supp. 299, 302 (D.Vt.1971); Younus v. Shabat, 336 F. Supp. 1137, 1140 (N.D.Ill.1971); and Purdy & Fitzpatrick v. California, 71 Cal.2d 566, 79 Cal.Rptr. 77, 456 P.2d 645, 649 (1969).

The City of Boston's denial of employment to aliens imposes upon them a burden inconsistent with their rights to the equal protection of our laws and ignores the exclusive authority of the Federal Government in the area of immigration and naturalization.

Accordingly, it is hereby adjudged that Chapter 3, Section 12 of the Boston Revised Ordinances of 1961, as amended by Chapter 5 of the Ordinances of 1969, is unconstitutional on its face. Plaintiff's motion for permanent injunctive relief is allowed.

Settle order on notice.

---

3. Citing Takahashi v. Fish and Game Commission, 334 U.S., at 419, 68 S.Ct. 1138, 92 L.Ed. 1478, the *Graham* court noted that the protection of Section 1981 extends to aliens.