Norman A. Stiller, J.
This is a hybrid proceeding which seeks a judgment declaring unconstitutional subdivision (e) of section 16 of chapter 365 of the ordinances of the City of Niagara Falls, New York, which requires that an applicant for a taxicab driver’s license be a citizen of the United States, and directing the issuance of such a license to the petitioner.
None of the material facts are in dispute, so that the question presented is one of law insofar as the constitutionality of subdivision (e) of section 16 of chapter 365 is concerned.
*1003 The petitioner is an Indian national, 19 years of age; he is a permanent resident alien, and has been so since 1966. On or about January 19, 1973, the petitioner’s application for a taxicab driver’s license was denied by the respondent, Murtaugh, upon the ground that petitioner was not a citizen of the United States. This proceeding followed, based upon the claim that the citizenship requirement denies to the petitioner the equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution of the United .States.
While the language of the Fourteenth Amendment refers to “ any person” it was held many years ago that its aegis extended to aliens as well as to citizens (Yick Wo v. Hopkins, 118 U. S. 356 [1886]), so that the former could successfully resist the arbitrary application of State power to deprive them of a livelihood where such an application against citizens would clearly violate the provisions of the amendment. The court then said (p. 369): “ The Fourteenth Amendment to the Constitution is not confined to the protection of citizens. It says: * Nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.’ These provisions are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws.”
That interpretation was further solidified in Truax v. Raich (239 U. S. 63, 35) .where the court struck down a statute of the State of Arizona which required that employers of more than five workers employ not less than 80% ‘1 qualified electors or native-born citizens of the United States or some sub-division thereof.” The court there observed i(pp. 41-42): “ It is sought to justify this act as an exercise of the power of the State to make reasonable classifications in legislating to promote the health, safety, morals and welfare of those within its jurisdiction. But this admitted authority, with the broad range of legislative discretion that it implies, does not go so far as to make it possible for the .State to deny to lawful inhabitants, because of their race or nationality, the ordinary means of earning a livelihood. It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the Amendment to secure. Butcher’s Union Co. v. Crescent City Co., 111 U. S. 746, 762; Barbier v. *1004 Connolly, 113 U. S. 27, 31; Yick Wo v. Hopkins, supra; Allgeyer v. Louisiama, 165 U. S. 578, 589, 590; Coppage v. Kansas, 236 U. S. 1, 14. If this could he refused solely upon the ground of race or nationality, the prohibition of the denial to any person of the equal protection of the laws would be a barren form of words. It is no answer to say, as it is argued, that the act proceeds upon the assumption that ‘ the employment of aliens unless restrained was a peril to the public welfare. ’ The discrimination against aliens in the wide range of employments to which the act relates is made an end in itself and thus the authority to deny to aliens, upon the mere fact of their alienage, the right to obtain support in the ordinary fields of labor is necessarily involved. It must also be said that reasonable classification implies action consistent with the legitimate interests of the State, and it will not ,be disputed that these cannot be so broadly conceived as to bring them into hostility to exclusive Federal power. The authority to control immigration —to admit or exclude aliens — is vested solely in the Federal Government. Fong Yue Ting v. United States, 149 U. S. 698, 713. The assertion of an authority to deny to aliens the opportunity of earning a livelihood when lawfully admitted to the State would be tantamount to the assertion of the right to deny them entrance and abode, for in ordinary cases they cannot live where they cannot work. And, if such a policy were permissible, the practical result would be that those lawfully admitted to the country under the authority of the acts of Congress, .instead of enjoying in a substantial sense and in their full scope the privileges conferred by the admission, would be segregated in such of the States as chose to offer hospitality.”
Given these precedents, it is hardly surprising that the Supreme Court struck down a California statute which attempted to bar the issuance of commercial deep sea fishing licenses to those “ineligible for citizenship” — in plain words, aliens of Japanese descent (Takahashi v. Fish Comm., 334 U. S. 410), and finally, in Graham v. Richardson (403 U. S. 365) statutes of the States of Arizona and Pennsylvania which conditioned public assistance upon long time residence (15 years) in the United States, or United States citizenship.
The power of a State to establish reasonable classifications governing the distribution of its largess, the use of its natural resources, or in licensing those whose occupations are affected by a substantial public interest, is broad but not unlimited, and especially is that so when the classification is based on nationality or race so that such criteria have been labeled “ inherently *1005 suspect and subject to close judicial scrutiny.” (Graham v. Richardson, supra, p. 372.)
Nothing is shown here to justify the segregation of applicants for taxicab driver’s license into two classes based on citizenship or the lack of it, except the undifferentiated fear that alien applicants ‘ ‘ may be more inclined than citizens to avail themselves of the opportunity to partake or promote criminal activities ”. (Respondents’ answering affidavit.)
The deprivation of an opportunity to earn a livelihood by means of an otherwise lawful occupation must be supported by a good deal more than such speculation reminiscent more of the ethnic and religious biases of the 1900’s than of this century.
This petitioner has resided here, for all that appears, in a law-abiding fashion for over seven years; it seems unlikely that citizenship alone would enhance his virtue. Even in cases involving public employment, the courts have been prompt in striking down systems of classification which broadly segregated applicants into citizen-noncitizen categories.
In Dougall v. Sugarman (339 F. Supp. 906, affd. 413 U. S. 634), a section of the New York Civil Service Law, restricting civil service employment to United States citizens, was invalidated; and in Mohamed v. Parks (352 F. Supp. 518), an ordinance of the City of1 Boston, restricting municipal employment to citizens, suffered the same fate. (See, also, Miranda v. Nelson, 351 F. Supp. 735 and Faruki v. Rogers, 349 F. Supp., 723.)
Feihaps most akin to the present case is that described in Arias v. Examining Bd. of Refrig. and Air Conditioning Technicians (353 F. Supp. 857). There the Legislature of the Commonwealth of Puerto Rico conditioned entry into the trade of air conditioning technicians upon the applicant being a United States citizen. The defendants there, as here, were understandably unable to show any compelling State interest in the classification, nor any reasonable relationship between fitness to practice the trade involved and the citizen requirement.
I hold, therefore, that subdivision (e) of section 16 of chapter 365 of the ordinances of the City of Niagara Falls, New York, violates that provision of the Fourteenth Amendment to the United States Constitution which assures.to the petitioner equal protection of the laws, insofar as said paragraph conditions the issuance of taxicab driver’s license upon the applicant being a United States citizen.
*1006 Since there is an allegation in the answer interposed on behalf of the respondents, indicating that the petitioner’s application was not fully processed, injunctive relief will be withheld pending completion of that process, provided that a determination shall be rendered upon the application within 14 days from the date that service of an order based on this decision is made upon counsel for the respondents. An application for further relief, if necessary, may be made upon notice after the time limited.