QUESTION: In light of the decision by the United States Supreme Court in the case of Sugarman v. Dougall, 413 U.S. 634, may a municipality through its civil service system impose a ban on the municipality's employment of aliens?
SUMMARY: In light of decisions of the United States Supreme Court and lower federal courts, a municipality may not exclude lawfully admitted resident aliens from all public employment opportunities. The Supreme Court has indicated, however, that the states may impose citizenship requirements as to an appropriately designated class of public officeholders, including elective or important nonelective executive, legislative, and judicial positions, for officers who participate directly in the formulation, execution, or review of broad public policy or perform functions that go to the heart of representative government. Since Graham v. Richardson, 403 U.S. 365 (1971), was decided by the United States Supreme Court, an expanding volume of cases has been handed down dealing with constitutional challenges to state statutes and regulations designed to limit all or certain types of employment to citizens, thereby excluding, among others, permanent resident aliens. In Graham, supra, at 376, the court first established that state classifications based on alienage are subject to "strict judicial scrutiny." Subsequently, in Sugarman v. Dougall,413 U.S. 634 (1973), the court considered an equal protection challenge to a section of the New York Civil Service Law which denied aliens the right to hold positions in New York's competitive civil service system. In striking down the challenged section, the court indicated that it was both "overinclusive and underinclusive." Decided the same day as Sugarman was In re Griffiths, 413 U.S. 717
(1973), in which the Supreme Court declared invalid a Connecticut statute that excluded aliens from the practice of law. Most recently, in Examining Board of Engineers, Architects and Surveyors v. Flores de Otero, 49 L.Ed.2d 65 (1976), the court applied the standards enunciated in Graham, Sugarman and In re Griffiths to a Puerto Rico statute that prohibited aliens from engaging in the private practice of engineering and found the statute constitutionally infirm. In Otero, supra, the court noted the following: Official discrimination against lawfully admitted aliens traditionally has taken several forms. Aliens have been prohibited from enjoying public resources or receiving public benefits on the same basis as citizens. See Graham v. Richardson, supra; Takahashi v. Fish Game Commission, supra. Aliens have been excluded from public employment. Sugarman v. Dougall, supra. See M. Konvitz, The Alien and the Asiatic in American Law, c. 6 (1946). And aliens have been restricted from engaging in private enterprises and occupations that are otherwise lawful. See In Re Griffiths, supra; Truax v. Raich, supra; Yick Wo v. Hopkins, supra. In discussing recent decisions which have extended full constitutional protection to alien residents, the court in Otero noted the following reason for such extension: It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure. If this should be refused solely upon the ground of race or nationality, the prohibition of the denial to any person of the equal protection of the laws would be a barren form of words. Truax v. Raich, 239 U.S. 33, 41 (1915). Lower federal courts have applied the standards used by the Supreme Court in Graham, Sugarman, and Griffiths to declare invalid a wide range of prohibitions directed by the states toward resident aliens. In Miranda v. Nelson, 351 F. Supp. 735 (D.Ariz. 1972), aff'd, 413 U.S. 902 (1973), a three-judge panel found unconstitutional Arizona's constitutional and statutory provisions which, with certain limited exceptions, prohibited resident aliens from holding a broad range of public jobs. The court specifically noted that prior decisions of the Supreme Court dating from the turn of the century which permitted states to discriminate between citizens and resident aliens because of the states' "special public interest" have been "eroded to splinters by more recent decisions." Miranda, supra, at 739. Similarly, in Chapman v. Gerard, 456 F.2d 577 (3rd Cir. 1972), the circuit court affirmed a lower court decision which invalidated a section of the Virgin Islands code which barred aliens from participating in a territorial scholarship fund. Also see Chapman v. Gerard,341 F. Supp. 1170 (D. St. Croix 1970). Taggart v. Mandel, 391 F. Supp. 732
(D.Md. 1975), involved a challenge by a resident alien to a Maryland statute which required applicants for appointment to the state constitutional office of notary public to be citizens. In granting the relief requested, the court held that the citizenship requirement was "wholly unrelated to the achievement of any valid state objective and thus . . . in violation of the equal protection clause of the fourteenth amendment." Taggart, supra, at 740. Also see Perkins v. Board, CA 72-1174 (D.Md. 1973), striking down a Maryland statute barring aliens from being examined for or issued a license as a doctor of veterinary medicine. In Mauclet v. Nyquist, 406 F. Supp. 1233 (W.D.N.Y. 1976), the court declared unconstitutional a New York education law which required that an applicant for financial aid be a United States citizen or intend to become a United States citizen. C.D.R. Enterprises, Ltd. v. Bd. of Education of City of New York, 412 F. Supp. 1164 (E.D.N Y 1976), involved another challenge by a resident alien to a provision of the New York labor law which required that, on public projects, preference must be given to New York citizens. In holding the statute unconstitutional, the court observed the following regarding the Supreme Court decisions relied upon by the state in order to defend the statute: The Constitution means what the Supreme Court says it means at a given time. The inferior federal courts must follow, in good conscience, the doctrines expounded by the Court. Constitutional law depends not on precise verbiage but on the evolution of doctrine to fit the times. It is not the function of the inferior federal courts to declare new doctrines or to find new meaning in the Constitution unless the controversy compels it. At the same time it is not the function of the federal courts to rely on older precedents based on articulated premises which have since been rejected by later decisions. Crane [right/privilege distinction] and Heim ["special public interest" doctrine] are not simply moribund; we believe they are dead. Otherwise the results in Graham and Dougall could not have been reached. C.D.R. Enterprises, supra at 1170. In Surmeli v. State of New York, 412 F. Supp. 394 (S.D.N.Y. 1976), an action was brought by a resident alien physician seeking to have declared unconstitutional a New York statute and the rules and regulations promulgated thereunder which required that a physician, in order to be licensed to practice medicine in New York, must either be a citizen or file a declaration of intent to become a citizen. The statute also provided for termination of a medical license upon the alien physician's failure to become a citizen within 10 years of licensure. The court invalidated the statute on the basis of In re Griffiths, supra. Norwick v. Nyquist, 417 F. Supp. 913 (S.D.N.Y. 1976), involved yet another challenge to a New York statute by a resident alien, this one barring aliens from teaching in the public schools of New York State. Again, the state attempted to defend the statute on the basis of Heim v. McCall, 239 U.S. 175 (1915), and Crane v. New York, 239 U.S. 195 (1915), and again the court rejected these decisions, stating at 918, n. 9, the following: To the extent that defendants would invoke the authority of Heim v. McCall . . . and Crane v. New York . . . this Court need only note that whatever the constitutional status of public employment in 1915, more recent decisions make it clear that the States owe all of their lawful residents, whether aliens or citizens, equal access to public as well as private employment absent the necessity for restrictions designed to promote compelling state interests. (Citations omitted.) The scope of the state's compelling interests in imposing citizenship requirements was discussed in Sugarman. The court deferred to the state the right to exclude aliens from participation in its "democratic political institutions" and also recognized the state's constitutional responsibility for the "establishment and operation of its own government, as well as the qualifications of an appropriately designated class of public officeholders." Sugarman, supra, at 863. The state's power applies not only to imposing qualifications for voting, but also to qualifications of . . . persons holding state elective or important nonelective executive, legislative and judicial positions, for officers who participate directly in the formulation, execution or review of broad public policy [or] perform functions that go to the heart of representative government. Id. Also see Perkins v. Smith, 370 F. Supp. 134 (D.Md. 1974), aff'd, !mLN!xU.S.!mLN!x, 96 S.Ct. 2616 (1976) upholding the exclusion of aliens from service on grand and petit jury panels in state and federal courts and De Canas v. Bica, !mLN!xU.S.!mLN!x, n. 6, 47 L.Ed.2d 43, 50 (1976) inferring that disparate treatment of aliens by the states which is congressionally sanctioned would present different questions. [Compare: s. 455.012, F. S., and Ch. 76-277 which relate to state restrictions on employment of resident aliens.]
To the extent that AGO's 073-6, 073-104 and 073-105 are in conflict with this opinion, they are hereby receded from.